**HAMILTON GAS CO. v. WATTERS et al.**
**No. 3712.**

Circuit Court of Appeals, Fourth Circuit.
Jan. 9, 1935.

Frank Lively, of Charleston, W. Va., and Nathan A. Smyth, of New York City, for appellant.

Stanley C. Morris, of Charleston, W. Va., and Thomas R. White, of Philadelphia, Pa. (Philip P. Steptoe, of Charleston, W. Va., White, Schnader, Maris & Clapp, of Philadelphia, Pa., and Steptoe & Johnson, of Charleston, W. Va., on the brief), for appellees.

Before PARKER, NORTHCOTT, and SOPER, Circuit Judges.

SOPER, Circuit Judge.

A conflict has arisen as to which of two federal courts—the District Court of the Southern District of West Virginia or the District Court of the Southern District of New York—has obtained jurisdiction, as a court of bankruptcy, of the proceedings for the reorganization of Hamilton Gas Company, a Delaware corporation, under the provisions of the Act of Congress of June 7, 1934, whereby sections 77A and 77B were added to the National Bankruptcy Act (11 USCA §§ 206, 207). The Act of June 7, 1934, was approved by the President at 12 o'clock on that day. The fact that the act had been signed was promptly telephoned from Washington, D. C., to attorneys in Charleston, W. Va. Thereupon they filed a petition in the District Court for the Southern District of West Virginia on behalf of the debenture holders' protective committee of the corporation and two other creditors, alleging that the corporation had its principal place of business and its principal assets in that district; that it was engaged in the business of producing and selling natural gas in West Virginia and Kentucky to other corporations, who sold and distributed the product to customers; that it had outstanding 1,684 shares of 7 per cent. preferred stock of the par value of $100 and 925,079 shares of common stock of the par value of $10; that its liabilities consisted of $2,346,000 of 6½ first mortgage bonds, $746,000 of five-year sinking fund debentures, $350,000 of unsecured notes and other obligations, and $300,000 as an indorser upon the notes of a subsidiary; that, having been unable for some time to meet its maturing obligations, receivers were appointed to take charge of its property by the District Court of the Southern District of West Virginia on January 20, 1932, while it was insolvent, under whose supervision the business of the corporation had since been operated; that during the receivership, and prior to June 7, 1934, a committee representing the bondholders had been formed, and had received on deposit 60 per cent. of the outstanding bonds, and had formulated a plan for the reorganization of the corporation, and that, shortly after the appointment of the receivers, the debenture holders' protective committee was formed, and had received on deposit 77.9 per cent. of the outstanding debentures.

The petition alleged that it was necessary that the capital structure of the corporation be reorganized so as to reduce the fixed character of its obligations and the extent of the maturities thereof, and that the plan of reorganization formed by the bondholders' committee was feasible, and that the petitioners desired to effect a reorganization of the corporation substantially in accordance therewith.

On this petition, an order was passed directing that a copy of the petition and of the order be served upon the debtor, and that within ten days after service the debtor file its answer to the petition. An answer

was filed on June 18, 1934, in which it was alleged that the court was without jurisdiction to entertain the proceeding because (1) the petition had been filed on June 7, 1934, prior to the taking effect of section 77B; and (2) that on June 8, 1934, at 9:01 a. m. daylight saving time, the corporation had filed its petition for reorganization under the same section of the act in the United States District Court for the Southern District of New York, where it had its principal place of business; and that on June 9, 1934, that court had entered its decree, approving the petition as properly filed in good faith and taking exclusive jurisdiction of the debtor and its property wherever located. The answer also denied that during the six months next preceding the date of the filing of the petition in West Virginia the corporation had its principal place of business in the Southern District of that state, or that the debtor was insolvent or that receivers had been appointed for it during insolvency. There was no denial of the allegation of the petition that the debtor had had its principal assets within the territorial jurisdiction of the court.

On June 21, 1934, the matter was considered by the court on petition and answer, and it was decreed that the petition of the creditors be approved as complying with section 77B and as having been filed in good faith; and it was further decreed that the court take exclusive jurisdiction of the proceedings as of the date of their inception, for the purposes of the section, and also of the debtor and all of its property, wheresoever situated. A motion of the debtor, through its counsel, that the petition be dismissed upon the grounds set out in the answer, was denied. A petition for the approval of the plan of reorganization was inspected by the court and ordered to be filed.

An appeal was taken from this decree. The appellant contends that the Act of June 7, 1934, did not take effect until the next day, because it provides in section 77B, subsec. (p), 11 USCA § 207 (p), that the section shall take effect and be in force from and after the date of the approval of the amendatory act. The argument is based for the most part on certain decisions which, interpreting a statute or a contract, hold that, when time is to be reckoned from a particular day or event, the general rule is to exclude the designated day and to include the last day of the specified period. On the other hand, there is the well-established rule that an act of Congress, in the absence of an express prohibition to the contrary, takes effect from the day of its approval by the President. Compare Sheets v. Selden's Lessee, 2 Wall. 177, 191, 17 L. Ed. 822; Burnet v. Willingham L. & T. Co., 282 U. S. 437, 51 S. Ct. 185, 75 L. Ed. 448; Dillon v. Gloss, 256 U. S. 368, 41 S. Ct. 510, 65 L. Ed. 994; Corneli v. Moore, 257 U. S. 491, 42 S. Ct. 176, 66 L. Ed. 332; Zimmerman v. United States (C. C. A.) 277 F. 965; Leidigh Carriage Co. v. Stengel (C. C. A.) 95 F. 637, 641; Turner v. Odum, 3 Cold. (43 Tenn.) 455. Hence, notwithstanding certain dicta that the act in question did not take effect until June 8, 1934 (In re National Department Stores (D. C.) 8 F. Supp. 19), we shall assume for the purposes of this case that it took effect when signed by the President, and that the petition filed by the creditors, in law as well as in fact, was filed prior to the debtor's petition in the District Court of the Southern District of New York.

There are, however, certain provisions in section 77B, from which it seems to us reasonable to infer that, under such conditions as prevail in this case, the court, in which a voluntary petition is filed by a debtor, takes jurisdiction of the case, although a creditors' petition may have been previously filed in another district; and hence the case should not be governed by an application of the ordinary rule that, as between two courts of concurrent and co-ordinate jurisdiction, the court which first obtains jurisdiction and constructive possession of property by the filing of a bill is entitled to retain it without interference. Harkin v. Brundage, 276 U. S. 36, 43, 48 S. Ct. 268, 72 L. Ed. 457. The act provides alternative methods by which plans of reorganization may be submitted to the courts. The initiative may be taken by the debtor corporation, or by three or more creditors who have provable claims amounting, in the aggregate, exclusive of the value of securities held by them, to $1000 or over; and the proceedings in either case may be instituted either in the court in whose territorial jurisdiction the corporation, during the preceding six months, has had its principal place of business or its principal assets, or in any territorial jurisdiction in the state in which it was incorporated. Conflicts are obviously likely to occur, since either of two interested groups may begin proceedings in any one of three (or more) different jurisdictions. The inquiry is whether section

77B furnishes the guide to solve the difficulties as they arise, so that recourse to the general rule of priority need not be had.

We note first of all that subsection (a) of section 77B (11 USCA § 207 (a), referring to the petition or answer which a corporation is authorized to file, provides that "the court shall upon petition transfer such proceedings to the territorial jurisdiction where the interests of all the parties will be best subserved." This calls for an exercise of judicial discretion, but does not settle the question as to which of two courts, lawfully entertaining proceedings for reorganization, has the prior right to proceed. The provision, however, does recognize the fact that the ordinary rule that the court which first obtains jurisdiction of a case retains it to the end is not necessarily always applied. It was perhaps unnecessary for Congress to include this provision, since under subsection (k) of section 77B (11 USCA § 207 (k) consistent provisions of the National Bankruptcy Act in general are made applicable to reorganization proceedings; and section 32 of that act (11 USCA § 55) empowers courts of bankruptcy, when petitions are filed in different jurisdictions against the same person, to relinquish jurisdiction to that court which can proceed with the proceeding for the greatest convenience of the parties in interest. General Order in Bankruptcy No. 6 (11 USCA § 53), adopted by the Supreme Court of the United States, also provides that, when two or more petitions shall be filed against the same individual in different districts, the first hearing shall be had in the district in which the debtor has his domicile, and the proceedings upon the other petition may be stayed until the adjudication is made upon the petition first heard; and the court which makes the first adjudication in bankruptcy shall retain jurisdiction over all proceedings therein until the same shall be closed. As to two or more petitions against partnerships in different courts, the provision is that the petition first filed shall be first heard, and the other stayed until adjudication is made.

The decisions of the courts have pointed out that there may be some inconsistency between section 32 of the act and General Order No. 6, and have applied these enactments in a variety of circumstances to conflicts of jurisdiction; and, in some instances, have held that bankruptcy proceedings in the domicile of an individual or corporation are entitled to priority, although filed subsequent to the institution of proceedings in other districts of concurrent jurisdiction. See In re New Era Novelty Co. (D. C.) 241 F. 298; In re Isaacson (D. C.) 161 F. 779; In re Sears, Humbert & Co. (C. C. A.) 128 F. 275; In re Vanoscope Co. (C. C. A.) 233 F. 53. Compare In re Waxelbaum (D. C.) 98 F. 589; In re Elmira Steel Co. (D. C.) 109 F. 456; In re United Button Co. (D. C.) 132 F. 378; Royal Ind. Co. v. American Bond Co., 289 U. S. 165, 53 S. Ct. 551, 77 L. Ed. 1100. For our purposes, it is sufficient to note that both Congress and the Supreme Court, in dealing with the National Bankruptcy Act, have thought it expedient, under certain circumstances, to provide for priority of jurisdiction in a court of bankruptcy, although courts of equal dignity may have previously obtained jurisdiction over the subject-matter.

Similarly, the Act of June 7, 1934, appears to us to give the preference under certain circumstances to the jurisdiction selected by the corporation debtor rather than that chosen by petitioning creditors, who are entitled, even if they control no more than $1,000 of claims, to institute a proceeding in any of the territorial jurisdictions specified. Under the enacting clause, sections 77A and 77B became a part of chapter 8 entitled "Provision for Relief of Debtors," which was enacted by the Act of March 3, 1933, during a period of great financial depression affecting all lines of business. Sections 74, 75, 76, and 77 were then added to the National Bankruptcy Act (see 11 USCA §§ 202, 203, 204, 205). Section 74, as amended June 7, 1934, § 2 (11 USCA § 202), entitled "Compositions and Extensions," empowers any person except a corporation to file a petition, accompanied by schedules of assets and liabilities, stating that he is insolvent or unable to meet his debts as they mature, and that he desires to effect a composition or an extension of time to pay his debts; and, upon the filing of such a petition, the judge is directed to enter an order, either approving it, if satisfied that it is filed in good faith, or dismissing it. The filing of such a petition subjects the debtor and his property, wherever located, to the exclusive jurisdiction of the court in which the order of approval is filed. Section 74, subsec. (m) as amended by Act June 7, 1934, § 2 (11 USCA § 202 (m). As pointed out in Collier on Bankruptcy, Annual Supplement, 1934, p. 698, the last-mentioned provision is broader than any previous statutory dec-

laration of the jurisdiction of the bankruptcy court.

Section 75, as amended (11 USCA § 203), entitled "Agricultural compositions and extensions," was designed to enable a farmer who is insolvent or unable to meet his debts as they mature, to apply to a bankruptcy court for an extension of time within which to pay his debts, upon filing a petition in the appropriate court.

Section 77 (11 USCA § 205), entitled "Reorganization of railroads engaged in interstate commerce," empowers a railroad corporation engaged in such commerce, or creditors thereof holding not less than 5 per cent. of the indebtedness, to file a petition in the District Court in which the railroad had its principal executive or operating office, to submit a plan of reorganization to the court.

Section 77B rounded out the legislation passed to relieve the distress of debtors generally, by providing a method for the reorganization of corporations. Subsection (a) first provides that the corporation may file in one of the territorial jurisdictions specified an original petition, or, if a proceeding is pending in bankruptcy, a petition, stating the requisite jurisdictional facts, the nature of its business, and a brief description of its financial condition, and a statement that it is insolvent or unable to meet its debts as they mature, and desires to effect a plan of reorganization. (If an involuntary proceeding is pending, it seems that the debtor's application for reorganization should be made in the form of an answer.) The judge is directed to enter an order either approving the petition, if satisfied that it complies with the section and has been filed in good faith, precisely as is provided in section 74, in the case of an individual applying to a court of bankruptcy for an extension of time within which to pay his debts. If the petition is approved, then also, as in the case of the individual debtor, "the court * * * shall, during the pendency of the proceedings under this section, have exclusive jurisdiction of the debtor and its property wherever located." It is noticeable that no limitation is imposed upon the debtor with reference to the prior filing of a petition for reorganization by the creditors. It is possible, in the case of a debtor's petition, to obtain immediate action, for the court is empowered upon the filing of the petition, and without delay, to enter its order of approval. Moreover, it is significant that exclusive jurisdiction over the debtor and its property, wherever located, is expressly provided.

Following these provisions of subsection (a), the alternative method is set out which empowers three or more creditors to file a petition for reorganization; but as to this feature of the act it is expressly provided that the petition may not be filed by the creditors if the corporation has filed one. A period of ten days is required in which the corporation shall answer after service of the copy of petition; and only after the admission of jurisdiction and of the material allegations of the petition or a favorable determination of these issues in case of a contest is the court empowered to enter an order of approval of the petition. There is no provision that the court shall assume exclusive jurisdiction of the person and property of the debtor.

Subsection (a) does provide that, if the creditors' petition is approved, the proceedings thereon shall continue with like effect as if the corporation had itself filed a petition under the section; and it is insisted that this provision shows conclusively that the creditors' petition has a legal existence in the court where filed from the time of its institution, and, once filed, is entitled, as in any other case, to be prosecuted to the end. The language, however, does not require the construction sought to be placed upon it, and it may be harmonized without distortion of its real meaning with the prior provision of subsection (a), which confers exclusive jurisdiction on the court of bankruptcy in which a debtor's petition has been approved. Both clauses may be given effect, if preference is given to the debtor's petition, even though a creditors' petition has been previously filed, but not previously approved. In short, since the debtor is not forbidden to file a petition after the filing of one by creditors, it is reasonable to assume that the debtor may file its petition and secure the approval thereof at any time prior to action upon a creditors' petition, even though the latter be previously filed. The provision that the proceeding on the creditors' petition shall be continued after its approval as if the proceeding had been instituted by the debtor may fairly be interpreted to mean that, after the approval of a petition of either kind, the course of the proceeding shall be the same; and the provision for exclusive jurisdiction, upon the approval of the debtor's petition, may be given effect by denying to any other court

thereafter the power to approve and to proceed with a creditors' petition.

Light is thrown upon the question before the court by a consideration of subsection (k) and subsection (o) of section 77B (11 USCA § 207 (k, o). The former, amongst other matters, provides generally that the provisions of the Bankruptcy Act, not inconsistent with section 77B, shall apply to proceedings thereunder, and that the date of the order approving the petition shall be taken to be the date of adjudication, and shall have the same consequence and effect as an order of adjudication. Subsection (o) provides that, in a proceeding under the section, the jurisdiction and powers of the court, and the rights and duties of the debtor and creditors, shall be the same as if a voluntary petition for adjudication had been filed and a decree of adjudication had been entered when the debtor's petition was approved. These subsections make applicable to proceedings filed under section 77B, General Order No. 6, to which we have already referred. That order gives preference to proceedings in the domicile, which is not here involved; but, in addition, it provides that the court which makes the first adjudication in bankruptcy shall retain jurisdiction over all proceedings therein until the same shall be closed, subject to the right of the court to transfer the proceedings, as provided in the General Order and in section 32 of the Bankruptcy Act. It is clear, under General Order No. 6, that the court in which the first petition is filed does not acquire exclusive jurisdiction by reason of the filing of the petition; and equally clear that the court, making the first adjudication, if it has jurisdiction of the case, is entitled to retain jurisdiction over the proceedings; and this jurisdiction is not taken away by reason of the fact that a petition may have been filed prior thereto in another court which also has jurisdiction. In other words, it is the priority of the adjudication, and not priority in the filing of the petition, which determines the right of the court to retain jurisdiction as against another in which a petition has also been filed. See In re Sears, Humbert & Co. (C. C. A.) 128 F. 275.

The conclusion we have reached does not impair the force and effect of the well-established doctrine that the court which first obtains jurisdiction of the subject-matter of a proceeding in rem is entitled to retain it to the exclusion of all other tribunals. The rule is based upon the great importance of avoiding conflicts of jurisdiction, not only between federal courts and state courts, but also between courts of the same origin. But there is no necessity for enforcing the rule rigidly when for some purpose the preference of one jurisdiction over another is established by the Legislature. We have seen that such has been the effect of section 32 of the National Bankruptcy Act and of General Order No. 6 of the Supreme Court of the United States. While the matter is not free from doubt, we are of the opinion that Congress had the same purpose in view in enacting section 77B for the protection of insolvents or persons unable to meet their debts as they mature, and concluded that it was wiser to permit the corporate debtor to select the jurisdiction in which its plan of reorganization should be considered, provided it should act with promptness, rather than to accord this privilege to three or more creditors whose claims may represent only a small fraction of the total indebtedness. A similar result has been reached by the District Court of the United States for the District of Delaware, In re National Department Stores, Inc., 8 F. Supp. 19, where the debtor's and creditors' petition were filed in the same court.

The minor contention is made by the appellant that the petition filed by the debenture protective committee and two other creditors in the Southern District of West Virginia was insufficient, in that it was not accompanied by the instruments of assignment or transfer under which the committee acquired its interest in the bonds, and was not accompanied by affidavit setting forth the true consideration therefor, as provided in General Order No. 5 of the National Bankruptcy Act as amended April 13, 1933 (11 USCA § 53). Subdivision (b) of section 77B (11 USCA § 207 (b) expressly provides that, for all purposes of this section, any creditor may act in person or by an attorney at law or by a duly authorized agent or committee. The petition satisfies this provision, since it was brought by a duly authorized committee; and there was no assignment or transfer of the creditors' claims for a consideration such as contemplated by the provisions of General Order No. 5.

The decree of the District Court must be reversed and the case remanded for further proceedings. In reaching this conclusion, we have assumed, as did also counsel in their treatment of the case, that the

182

principal place of business of the debtor during the six months preceding the institution of the case was in the Southern District of New York, as alleged in the answer, and not in the Southern District of West Virginia. However, it has come to our attention, through statements in the answer filed in this court by the appellees to the petition for appeal, that the bondholders' protective committee has petitioned the District Court of the Southern District of New York to dismiss the debtor's petition for reorganization therein filed, or, in the alternative, to transfer the proceedings to the Southern District of West Virginia. They are contending that the New York office of the debtor was given up in the early part of 1932 and that the principal place of business has always been in the Southern District of West Virginia; that receivers were appointed for the corporation by the District Court of the United States for the District of Delaware in January, 1932, followed shortly thereafter by the appointment of ancillary receivers in the Southern District of West Virginia, the Eastern District of Kentucky, the Southern District of New York, and the Eastern District of Pennsylvania, and followed by the appointment of receivers in other suits which originated in the Southern District of West Virginia; and that the receivers in the Southern District of West Virginia and in the Eastern District of Kentucky have conducted the entire business of the debtor since their appointment.

■ The facts in this respect are not before us as a part of the formal record, and counsel have not discussed the question as to how far the location of the principal place of business has been affected by the appointment and operations of the receivers. Nevertheless, it seems to us that the proper solution of this question may well determine the present controversy. It may be found that the principal place of business of the corporation, within the meaning of the National Bankruptcy Act, has been the place in which the greater part of the business has actually been conducted rather than the place where, for convenience, offices have been maintained, see Collier on Bankruptcy, p. 62; and it is settled that the place of business of a corporation does not cease to be such, because its affairs are in the control of equity receivers, see Royal Indemnity Co. v. American Bond Co.,

289 U. S. 165, 53 S. Ct. 551, 77 L. Ed. 1100; In re Monarch Oil Corporation (D. C.) 272 F. 524; In re American & British Mfg. Corporation (D. C.) 300 F. 839; In re Consolidated Gas Utilities Co. (D. C.) 8 F. Supp. 385. If it should be found that the principal place of business of the debtor during the six months preceding the filing of the petition was not in the Southern District of New York, then the New York Court had no jurisdiction to pass upon the petition, and the court below should retain jurisdiction. In re Continental Coal Corporation (C. C. A.) 238 F. 113. If, however, the principal place of business of the debtor was in the Southern District of New York, the court below should vacate its order approving the creditors' petition filed therein, and transfer the proceedings before it to the Southern District of New York; unless, in the meantime, the court in that district should determine that the interest of all the parties would best be subserved by having the proceedings conducted in the court below, and should make an order transferring them to that court.

■ The submission of a case on brief and answer is ordinarily held to constitute an admission by the complainant of facts well pleaded in the answer, and to present the whole case for final decree in favor of either party. In re Sanford Fork & Tool Co., 160 U. S. 247, 257, 16 S. Ct. 291, 40 L. Ed. 414; Terral v. Burke Construction Co., 257 U. S. 529, 531, 42 S. Ct. 188, 66 L. Ed. 352, 21 A. L. R. 186; Grether v. Wright (C. C. A.) 75 F. 742. But it is well established that an appellate court has the power to remand a case to a lower court for further proceedings if it has been tried on the wrong theory, or the record is not in condition for it to decide the question presented with justice to all parties. Underwood v. Commissioner (C. C. A.) 56 F.(2d) 67, 73. And see Newcomb v. York Ice Mach. Corporation (C. C. A.) 56 F.(2d) 576, 578; Aetna Indemnity Co. v. Baltimore, etc., R. Co., 112 Md. 389, 76 A. 251, 136 Am. St. Rep. 389, 21 Ann. Cas. 268. The final disposition of the pending case should not, in our opinion, be governed by the decision of a bare legal question, based on an assumption as to the locality of the principal place of business of the debtor that may be contrary to the actual fact.

Reversed and remanded.